Ellis *v.* Crowe.

4-4450

Opinion delivered December 7, 1936.

*W. A. Leach* and *S. S. Hargraves,* for appellants.

*Ingram & Moher* and *Dixon, Williams & Edmondson,* for appellees.

Johnson, C. J. In 1931 and prior thereto, appellees, J. R. Crowe and F. E. Ragland, owned and operated the Crowe Drug Company, an Arkansas corporation domiciled at Stuttgart, Arkansas. On December 31, 1931, this corporation being indebted to Ellis-Jones Drug Company of Memphis, Tennessee, in a sum in excess of $4,000, by mutual agreement and consent this indebtedness was divided between Crowe and Ragland as follows: Crowe executed his promissory note in favor of said Ellis-Jones Drug Company for the sum of $2,088, drawing interest at the rate of 8 per cent. per annum, due and payable on demand. Eighty-three shares of capital stock of the First State Bank of Stuttgart were pledged as collateral to secure the due and prompt payment of this note. F. E. Rag-

land executed his promissory note in favor of said Ellis-Jones Drug Company for the sum of $2,088, drawing interest at the rate of 8 per cent. per annum from date until paid, payable on demand. Thirty shares of capital stock of the Crowe Drug Company were pledged as security for this note, and it was also indorsed by J. R. Crowe. As we understand the record, these notes were identical in tenor and effect save as heretofore pointed out. Certain small credits were made and indorsed upon the Ragland note, but the issues here presented do not necessitate going into detail in this regard.

These notes not being fully paid at or subsequent to their maturity, appellants, Mrs. E. M. Ellis and Mrs. S. D. Pinson, claiming to own the same, instituted two separate suits in the courts of this state endeavoring to enforce collection. One suit was instituted in the circuit court of Arkansas county against Crowe and the other was instituted in the Arkansas chancery court against Ragland and Crowe. The case filed in the circuit court was transferred to the chancery court, and there the two causes were consolidated for trial purposes. To the complaint thus filed Crowe and Ragland interposed common defenses as follows: First, that the said notes were Tennessee contracts and were usurious and void; second, that said complaints were without equity because the transfer of said notes from the payee to appellants does not constitute them or either of them the legal or equitable owner thereof.

Primarily, the cause was submitted for trial and decree upon stipulation of counsel, in substance as follows:

"That the notes sued on were executed by defendants in the office of Ellis-Jones Drug Company in the city of Memphis, Tennessee, on January 31, 1931, and delivered by the defendants to Ellis-Jones Drug Company at its office in Memphis, Tennessee, and were given in settlement of an old account for merchandise sold and delivered to the Crowe Drug Company by Ellis-Jones Drug Company, and not for money lent; and that at that time the said Crowe and Ragland were stockholders and directors of the Crowe Drug Company and that for a valuable con-

sideration received, the said Crowe and Ragland agreed to pay the debt, the amount of which is evidenced by the notes then due and owing to Ellis-Jones Drug Company.

"That the 83 shares of stock in the First State Bank, attached to the Crowe note as collateral were subsequently mailed to be attached to the Crowe note as collateral security, pursuant to agreement had on the date of the execution of the note in Memphis; that the First State Bank at that time was an Arkansas corporation domiciled at Stuttgart, Arkansas; that the Tennessee code and Supreme Court decisions may be read as the law applicable to this state, without the same being specifically pleaded or proved; * * *."

In addition to the stipulation of fact, testimony was adduced to the effect that the notes were not indorsed by the payees at or prior to transfer and delivery to appellants.

The chancellor dismissed appellants' complaints for want of equity, and this appeal seeks reversal.

The notes in suit having been executed and made payable in the state of Tennessee are Tennessee contracts, and the laws of that state must govern their collection and enforcement. *White Company* v. *Bragg,* 168 Ark. 670, 273 S. W. 7; *Senter* v. *Bowman,* 52 Tenn. (5 Heisk.) 14.

The defenses interposed by appellees to the effect that appellants are not the owners of the said notes and, therefore, cannot maintain suits thereon is not tenable under the facts and circumstances of this record. Section 7373, Williams' Tennessee Code of 1932, provides:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it the transfer vests in the transferee such title as the transferror had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferror. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made" and this provision of the law has been sustained by the Supreme

Court of that state. *Landis* v. *White Brothers,* 127 Tenn. 504, 152 S. W. 1031.

The testimony is undisputed that appellants paid value for said notes, and, therefore, under the established law of Tennessee, they can maintain this suit the same as the original payees might have done.

The question of usury under the Tennessee laws presents a more difficult question of solution. Fundamentally, these notes upon their faces appear to be usurious because they draw a rate of interest in excess of that allowed by Tennessee statutes. Section 7301 of the 1932 Tennessee code defines interest as follows: "Interest is a compensation which may be demanded by the lendor from the borrower, or the creditor from the debtor, for the use of money"; and § 7302 of said code prescribes the legal rate of interest at 6 per cent. per annum. This section provides: "The amount of said compensation shall be at the rate of $6 for the use of $100 for one year; and any excess over that rate is usury." It will be noted that the last quoted section expressly provides that any excess over the legal rate prescribed thereby is usury. The law in the state of Tennessee seems to be well settled that the courts of that state will not lend aid or assistance to the enforcement of contracts containing illegal provisions upon their faces. *Isler* v. *Brunson,* 25 Tenn. (6 Humph.) 277; *Bank* v. *Walter,* 104 Tenn. 11, 55 S. W. 301; *Brannon* v. *Davis,* 5 Tenn. App. 72. It also seems to be well settled that when such instrument is determined to be illegal and void the collateral attached thereto is likewise illegal and void. *McFerrin* v. *White,* 46 Tenn. (6 Cald.) 499.

Appellants tacitly concede the force of the Tennessee statutes and opinions cited and quoted, *supra,* but contend that under and by virtue of § 3493 A1 of the Tennessee Code of 1917, which provides, "It shall be lawful in all cases where money is loaned in this state, whether to residents or non-residents, and is secured wholly by mortgage or trust deed on property, real or personal, situated in some other state, for the lender to contract for any rate of interest allowed by the law of the state where the

property pledged as security is situated; provided, in case of deficiency judgment no recovery on same can be had unless the excess interest over the legal rate in this state be allowed as a credit on said deficiency judgment,'' they are mortgagees or pledgees of personal property situated in the state of Arkansas, and are, therefore, allowed to charge and collect any rate of interest that is permissible under the laws of this state. Within the range of our investigation the Supreme Court of Tennessee has never construed the quoted section of the Code of 1917 to include pledges of personal property, nor has it decided to the contrary. In the absence of construction by the Tennessee court, it devolves upon us to adopt such construction as seems justified. By way of assistance in construction, however, we deem it appropriate and proper to say that the Tennessee Commission on Codification prior to January 1, 1932, codified this section to read as follows:

''It shall be lawful in all cases where money is lent in this state, whether to residents or non-residents, and secured wholly by mortgage, trust deed or pledge on property, real or personal, situated in some other state, for the lender to contract for any rate of interest allowed by the law of the state where the property conveyed or pledged as security is situated; provided, in case of deficiency judgment no recovery on same can be had unless the excess interest over the legal rate in this state be allowed as a credit on said deficiency judgment.'' (§ 7303, Code of 1932.) This codification was approved by the Tennessee General Assembly and is now the established rule of law in that state.

It definitely appears from the statute last quoted that where the sole security for the debt is a pledge of personal property situated in another state that the laws of such state shall control the interest rate.

In the absence of construction by the courts of Tennessee, we are constrained to follow the construction placed upon § 3494 A1 by the codification commission and adopted by the General Assembly of said state. This construction as embodied in what is now § 7303 seems to

be reasonable and fully justified. Section 3493 A1 seems to employ the words, "mortgage" and "pledge," interchangeably as appears from its context.

With this construction adopted, the solution of·this controversy is much simplified. The undisputed facts of this record reflect that the notes in suit were secured wholly by pledges of personal property situated in the state of Arkansas; therefore, the laws of Arkansas govern the legality of the permissible rate of interest which may be demanded or contracted. Eight per cent. per annum is a permissible interest rate in this state, and the instruments in suit are not usurious when measured by the Constitution and laws of this state.

But appellees insist that the last quoted Tennessee statutes are not applicable to the facts of this record because "no money was lent" in these transactions. We are unwilling to narrow a trade term to the limit contended for. Appellees' corporation owed an admitted indebtedness, and, to secure leniency these notes were executed. The transactions were exactly the same as if appellees had carried the cash to Memphis and paid it to the Ellis-Jones Drug Company, and it in turn had delivered the cash to appellees. The net results of the transactions were that appellees received credit to the amount of the notes, and this is lending money under the terms of the statute.

It follows from what we have said that the cause must be reversed and remanded, with directions to enter a decree in favor of appellants.

McHaney, J., dissents.